UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BONNIE KENYON,

    Plaintiff,                                    Case No. 3:15-cv-194

vs.

COMMISSIONER OF                    District Judge Thomas M. Rose
SOCIAL SECURITY,                   Magistrate Judge Michael J. Newman

    Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

    This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 6), the Commissioner's memorandum in opposition (doc. 7), Plaintiff's reply (doc. 8), the administrative record (doc. 5),[2] and the record as a whole.

I.

    A.    **Procedural History**

    Plaintiff filed for DIB alleging a disability onset date of November 3, 2009. PageID 44. Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*,

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

affective disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and insomnia. PageID 46.

After initial denials of her applications, Plaintiff received a hearing before ALJ Irma Flottman on October 24, 2013. PageID 58-81. The ALJ issued a written decision on February 11, 2014 finding Plaintiff not disabled. PageID 44-53. Specifically, the ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since November 3, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: affective disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and insomnia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: work is limited to simple, routine and repetitive tasks; in a low stress job, defined as having only occasional changes in the work setting; with no production rate or pace; only occasional interaction with co-workers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1953 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

    supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

  10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

  11. The claimant has not been under a disability, as defined in the Social Security Act, from November 3, 2009, through the date of this decision (20 CFR 404.1520(g)).

PageID 46-53.

  Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 35-37. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

  **B.** **Evidence of Record**

  In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 48-51. Plaintiff, in her Statement of Errors, summarizes the relevant medical evidence. Doc. 6 at PageID 406-09. The Commissioner defers to the ALJ's recitation of evidence. Doc. 7 at PageID 426. Except as otherwise stated herein, the undersigned incorporates the recitation of evidence put forth by both Plaintiff and the ALJ. Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

  **A. Standard of Review**

  The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed

3

the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

Plaintiff argues that the ALJ erred in weighing medical opinion evidence it relates to her mental health impairments; specifically, the ALJ's analysis of opinions offered by: (1) treating source Amita R. Patel, M.D.; (2) examining source David Chiappone, Ph.D.; and (3) record-reviewers Jennifer Swain, Psy.D., and Frank Orosz, Ph.D. Doc. 6 at PageID 404. As the first of these arguments are dispositive -- and merits a reversal and remand -- the Court need not reach the merits of Plaintiff's remaining arguments.

Plaintiff first argues that the ALJ erred in not assigning controlling weight to the opinion of treating source Dr. Patel and, further, by not providing "good reasons" for the weight actually

5

given.  "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]"  *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  Treating physicians and psychologists top the hierarchy.  *Id*.  "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Id*.  "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id*.  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original).  This requirement is known as the "treating physician" rule.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted).

Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406.  Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record" in the absence of "some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion" is accorded lesser weight. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c).[3] In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

---

[3] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id*.

In December 2011, Dr. Patel found that Plaintiff suffered from generalized anxiety disorder, insomnia, bipolar disorder, fatigue, and ADHD. PageID 303. As a result of those impairments, Dr. Patel concluded that Plaintiff could not "stay on task," suffered constant anxiety, "lack[ed] concentration" and could not work. *Id*. Subsequently, in November 2012, Dr. Patel found that Plaintiff had continual episodes of deterioration or decompensation; frequent deficiencies in concentration, persistence, or pace; marked[4] limitations in her ability to function outside the home; and marked limitations in her ability to maintain occupational functioning. PageID 381-83. The ALJ gave "little weight" to Dr. Patel's opinion because his conclusions purportedly "[did] not comport with [Plaintiff's] reported activities of daily living[,]" and were inconsistent with his own records. PageID 51.

Although a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record, *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citations omitted), the ALJ here did not conduct such an analysis. Initially, the Court notes that the ALJ failed to mention the concept of controlling weight when analyzing Dr. Patel's opinion or consider the appropriate factors in this regard. *See Wilson*, 378 F.3d at 544. Thus, the Court cannot determine whether or not the ALJ undertook the "two-step inquiry" required when analyzing treating source opinions. *See Gayheart*, 710 F.3d at 376-78. The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Id*.

---

[4] Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

Even assuming, *arguendo*, that the ALJ appropriately conducted a controlling weight analysis -- which did not occur here -- the undersigned would nevertheless find that the reasons given by the ALJ in rejecting Dr. Patel's opinion are unsupported by substantial evidence in the record. Notably, with regard to treatment records, Dr. Patel consistently noted clinical findings regarding Plaintiff's mental condition, such as distracted attention; psychomotor retardation; sad, anxious, and irritable mood; flat and blunted affect; preoccupation; and limited judgment. *See* PageID 284-96, 330-63, 384-89, 392-99. Thus, there are clinical signs in the record supporting Dr. Patel's opinion. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations omitted) ("a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" and, therefore, with regard to mental impairments, "clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology").

Instead of noting these findings, the ALJ focuses on Global Assessment of Functioning ("GAF") scores[5] provided by Dr. Patel. PageID 51 (noting that Dr. Patel "consistently assigned [Plaintiff] a GAF indicating only moderate symptoms"). A GAF score, however, is merely a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F. App'x 191, 194 n.2 (6th Cir. 2003). Additionally, GAF scores "are not raw medical data and do not necessarily indicate improved symptoms or mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). In fact, a "GAF score, alone, cannot

---

[5] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice").

discredit [a treating's physician's] assessment of Plaintiff's limitations[.]" *Mosley v. Comm'r of Soc. Sec.*, No. 3:14-CV-278, 2015 WL 6857852, at *5 (S.D. Ohio Sept. 14, 2015).

Aside from the foregoing, the undersigned's careful review of the record shows that Dr. Patel's opinions are consistent with other evidence. Most notably, consultative examiner Dr. Chiappone -- the only other acceptable mental health medical source to actually examine Plaintiff -- opined that Plaintiff "would have difficulty maintaining attention and concentration over time" and "would have difficulty dealing with stress on a job." PageID 370. Further, the ALJ failed to note that Dr. Patel specializes in psychiatry and treated Plaintiff regularly beginning in June 2010. PageID 284-96. While the ALJ is not required to list each factor one by one in conducting her analysis, she must at least provide a reviewing court with sufficient discussion to allow the Court to follow her reasoning. *See Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011). The ALJ's failure -- to note the factors that weigh in favor of Dr. Patel's opinion -- shows that such opinion was subjected to an improper heightened level of scrutiny. *Gayheart* at 377.

Based on the foregoing, the ALJ's non-disability finding is unsupported by substantial evidence and should be reversed.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability

is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, the proof of disability is not overwhelming, and there are conflicting medical opinions concerning Plaintiff's impairments.  Upon remand, the ALJ should appropriately assess the findings by Dr. Patel and all other evidence of record utilizing a vocational expert and/or medical advisor, if necessary.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:      July 15, 2016                             *s/ Michael J. Newman*
                                                     Michael J. Newman
                                                     United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).